AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED

APR 18 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Michael Joseph LAWRENCE | ) | Case No. 4-11-70433 |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 26, 2010__ in the county of __Contra Costa__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with intent to distribute a Schedule II controlled substance, namely, a mixture and substance containing a detectable amount of methamphetamine. |

This criminal complaint is based on these facts:

See attached AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

☑ Continued on the attached sheet.

APPROVED AS TO FORM:

AUSA JAMES C. MANN

*Complainant's signature*

FBI Special Agent Patrick Joseph Ernst
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/18/11

*Judge's signature*

City and state: San Francisco, California

Laurel Beeler, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Patrick Joseph Ernst, Special Agent of the Federal Bureau of Investigation, being duly sworn, hereby declare as follows:

## I. INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) assigned to the San Francisco Division and have been so employed since August 15, 2010. As a federal agent, I am authorized to investigate violations of the laws of the United States and I am a law enforcement officer with authority to execute warrants issued under the authority of the United States. My FBI Special Agent training consisted of a twenty-one week new agent training class during which I received instruction on various aspects of federal crime. Prior to becoming an FBI Special Agent, I was a Special Agent for the Internal Revenue Service–Criminal Investigation (IRS–CI) for approximately five years. As a Special Agent for IRS–CI, I trained at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia for twenty-four weeks. Training at FLETC consisted of instruction on legal principles and a variety of federal criminal violations, including money laundering, tax evasion, and other tax-related crimes. I have conducted criminal investigations involving investment fraud, money laundering, tax evasion and other financial crimes, as well as violations of the Bank Secrecy Act. I have also participated in the planning and execution of numerous federal search, seizure, and arrest warrants involving the above violations.

2. During the course of this investigation, I have consulted with Special Agent Gregory M. Eckhart. SA Eckhart has been an FBI Special Agent since August 2003. He is currently assigned to the San Francisco Field Division of the FBI, and investigates cases involving gangs, drug trafficking, and violent fugitives. He has received training at the FBI Academy in Quantico, Virginia, including training on violent street gangs, criminal case management, informant development, Title III investigations and the identification, use, packaging and sales of controlled substances. SA Eckhart also attended numerous training schools and seminars related to gangs, violent crime, and narcotics investigations, including many that provided instruction on drug-trafficking methods, money laundering methods, and

1 techniques for investigating those crimes. SA Eckhart has participated in the execution of
2 numerous state and federal search warrants and arrests involving alleged narcotics trafficking,
3 and he has participated in numerous investigations of narcotics traffickers and violent street
4 gangs. These investigations have involved the use of confidential informants, wire and physical
5 surveillance, telephone toll analysis, investigative interviews and the service of search and arrest
6 warrants.

7     3. SA Eckhart has interviewed numerous drug dealers, drug users, and
8 knowledgeable confidential informants about the lifestyles, appearances, and habits of drug
9 dealers and users. He is familiar with the manner in which narcotics traffickers smuggle,
10 package, transport, store and distribute narcotics, as well as how they collect and launder drug
11 proceeds. He has had discussions with other law enforcement personnel about the packaging and
12 preparation of narcotics, the distribution methods of illegal narcotics traffickers, and the security
13 measures that narcotics traffickers often employ. SA Eckhart has also examined documentation
14 of various methods by which methamphetamine, cocaine, marijuana, and other illicit drugs are
15 smuggled, transported and distributed. He has participated in surveillance of narcotics
16 traffickers. During surveillance, SA Eckhart has observed narcotics transactions, counter-
17 surveillance techniques, and the ways in which narcotics traffickers conduct clandestine
18 meetings. He has also participated in investigations that involved the interception of wire
19 communications, and he has been directly involved in the review and deciphering of intercepted
20 coded-conversations between narcotics traffickers that were later corroborated by surveillance or
21 by defendants' statements.

22     4. SA Eckhart is one of the case agents participating in the investigation of Joseph
23 Solice ABBATE, aka Sherman Joseph Fisher, aka "Butch," aka "Mac Dre," aka "Andre Hicks"
24 (ABBATE); Ramon RUBIO, aka "Primo" (RUBIO); and others, for narcotics trafficking and
25 firearms-related offenses.

26 **II. PURPOSE OF THIS AFFIDAVIT**

27     5. This affidavit is being submitted in support of a criminal complaint and arrest
28 warrant charging Michael Joseph LAWRENCE with possession with the intent to distribute

1  methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1).

2  6. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that, on or about October 26, 2010, Michael Joseph LAWRENCE knowingly and intentionally possessed with intent to distribute a Schedule II controlled substance, namely, a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The statements contained in this affidavit are based on information provided to me by law enforcement officers as well as my training, experience, and knowledge of this investigation.

7. In this affidavit I describe wire and electronic communications that have been intercepted pursuant to the interception orders in this investigation. In doing so, I have summarized portions of some, but not all, of the intercepted conversations. My summaries of these conversations are based on my personal review of recordings of the intercepted conversations, my training, experience, and knowledge of this investigation, notes of monitoring personnel and/or reviewers which were taken while the recorded conversations were occurring or at the time the conversations were reviewed, and/or other law enforcement personnel as to the meaning of vague or coded language and certain words and phrases. My summaries of the conversations are overviews and are not intended as verbatim transcripts. Even so, I have included in quotation marks my best attempt to provide a draft transcript of some of the speakers' words during the conversations. In some instances, I have only set forth the pertinent parts of sentences and I have used ellipses in some sentences instead of words or phrases that are unnecessary, profane, or repetitive. Subsequent review of the recorded conversations and the preparation of verbatim transcripts may show changes from the summaries provided herein. In addition, I know, based on my training, experience, and knowledge of this investigation (as well as the training, experience, and knowledge of other Agents with whom I have spoken) that criminal street gang members/associates and narcotics traffickers frequently use slang or coded or intentionally vague language when discussing illegal activity, particularly narcotics trafficking

or firearms use and/or possession. When a word or phrase used by a speaker constitutes slang or coded or intentionally vague language (or whose meaning would not be obvious to a layperson) I have provided my interpretation of those words and/or phrases in parentheses. My interpretations are based on my knowledge of and participation in this investigation and my discussions with SA Eckhart and with other experienced law enforcement personnel. My interpretations, however, may change as additional information is learned through the course of the investigation. The actual names of callers have been used where agents believe they have tentatively determined the identities of the callers, or where their voices are recognized by the monitoring personnel or reviewers. Finally, once I have identified the telephone number used by a given person in an intercepted conversation, I will not repeat that telephone number in my descriptions of subsequent intercepted conversations unless that person uses a telephone number different than the number he or she previously used. All times are approximate and all locations are in California unless otherwise noted.

### III. **PROBABLE CAUSE**

8. The wiretap portion of the investigation into the drug-trafficking activities of Joseph Solice ABBATE has been ongoing since September 2010. Over the course of the investigation, Agents have identified ABBATE and Michael Joseph LAWRENCE by comparing relevant surveillance observations with their respective DMV photographs. ABBATE and LAWRENCE were identified as the users of the below telephones through the interception of telephone calls made by each of them, and the surveillance conducted of the activities discussed during the intercepted telephone calls (i.e., ABBATE and/or LAWRENCE were seen in the locations or participating in the activities referenced in the preceding telephone calls). Additionally, LAWRENCE's telephone is subscribed in his name.

9. On October 21, 2010, at 8:46 p.m., a call was intercepted between Michael Joseph LAWRENCE using (510) 827-5242 (subscribed to Michael Lawrence, 2449 Aberdeen Way, Apartment 12, Richmond, California 94806) and Joseph Solice ABBATE using (510) 253-5135 (Session 6743). During the conversation, LAWRENCE stated: "How is it?" ABBATE responded: "Oh, it's good right now, some good tequila right now." LAWRENCE stated: "I just

was, uh, gonna get it for someone else." ABBATE encouraged: "It's real good right now . . . . just like . . . the other one I had, the last one you got." LAWRENCE asked: "Can we do it, like, kinda quick though, within the half hour or so?" ABBATE stated: "Yup, yup. What did you need? How many you need?" LAWRENCE stated: "Just, like, a half." ABBATE asked: "Just a half?" LAWRENCE confirmed, and ABBATE stated: "Just give me, uh, four-fifty ($450), four-fifty's cool." Based upon my training and experience, and the words used in other intercepted communications in this investigation, I believe that ABBATE was discussing the quality and color of methamphetamine when he stated "some good tequila right now." Additionally, based upon other calls intercepted over the course of this investigation, I believe that ABBATE sells an ounce of methamphetamine for approximately $900. Thus, I believe that this intercepted communication evidences LAWRENCE's brokering the sale of a half-ounce of methamphetamine for $450.

10. On October 26, 2010, at 6:13 p.m., a call was intercepted between LAWRENCE and ABBATE (Session 7860). During the conversation, LAWRENCE asked: "You still got the same?" ABBATE replied: "I got some good right now, some big white chunks, yep good one . . . not the same as the one I brought you the other day." Later, LAWRENCE said: "As long as you don't bring me no boo boo . . . I want two of 'em." LAWRENCE and ABBATE agreed to meet at LAWRENCE's house in twenty or thirty minutes. At 6:54 p.m., a call was intercepted between LAWRENCE and ABBATE (Session 7863). During the conversation, ABBATE said: "I'm downstairs." I believe that LAWRENCE was requesting two ounces of methamphetamine from ABBATE.

11. At 6:50 p.m., on the same date, Agents observed LAWRENCE arrive at 2449 Aberdeen Way, Richmond and park a blue truck bearing California License Plate 6F20307 (registered to Michael Lawrence, 2449 Aberdeen Way, Apt 12, Richmond, California) in a parking space marked "12." At 6:52 p.m., a Chevrolet Trailblazer bearing California License Plate 6LOS058 (registered to Edward Espiritu at 277 Violet Road, Hercules, California) (the Blazer) arrived and parked in the parking lot of the 2449 Aberdeen Way. Agents observed ABBATE exit the Blazer and walk into 2449 Aberdeen Way, which is a two-story apartment

building with interior hallways. Approximately three minutes later, Agents observed ABBATE exit the apartment building and get into the Blazer. ABBATE drove away from the apartment building in the Blazer. I believe that ABBATE delivered the two ounces of methamphetamine to LAWRENCE.

12. Based upon the intercepted communication on October 21, 2010, I believe that LAWRENCE resells the methamphetamine he purchases from ABBATE. Additionally, based upon the amount of methamphetamine (two ounces) LAWRENCE purchased from ABBATE, I believe that LAWRENCE intended to resell the methamphetamine to other customers. Based upon my training and experience, and the training and experience of other law enforcement officers working on this investigation, the amount of methamphetamine purchased by LAWRENCE is greater than the amount typically possessed by a user of methamphetamine. I have been informed that an individual user of methamphetamine in West Contra Costa County and the surrounding areas typically purchases methamphetamine in increments valued at ten to forty dollars. For ten dollars, a user generally purchases about 0.1 net grams of methamphetamine (also known as a "point"). For twenty dollars, a user generally purchases about 0.2 net grams of methamphetamine (also known as "two points").

## IV. CONCLUSION

13. For the reasons stated above, I believe there is probable cause to believe that, on or about October 26, 2010, Michael Joseph LAWRENCE knowingly and intentionally possessed with intent to distribute a Schedule II controlled substance, namely, a mixture and substance

////
////
////
////
////
////
////
////

1  containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). I
2  respectfully request that the Court issue the requested criminal complaint and arrest warrant.

_____
Patrick Joseph Ernst
Special Agent, Federal Bureau of Investigation

Sworn to before me this
___ day of April 2011.

_____
HONORABLE LAUREL BEELER
UNITED STATES MAGISTRATE JUDGE

7

AO 257 (Rev. 6/78)

SEALED BY ORDER OF THE COURT

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☒ COMPLAINT ☐ INFORMATION ☐ INDICTMENT ☐ SUPERSEDING

**OFFENSE CHARGED**

21 U.S.C. § 841(a)(1), Possession With Intent To Distribute A Schedule II Controlled Substance (Methamphetamine)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See Attachment.

Name of District Court, and/or Judge/Magistrate Location
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

FILED
APR 18 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**DEFENDANT - U.S**

▶ Michael Joseph LAWRENCE

DISTRICT COURT NUMBER
4-11-70433

**PROCEEDING**

Name of Complaintant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

☒ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    MELINDA HAAG
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    JAMES C. MANN, AUSA

**DEFENDANT**

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☐ If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☒ On this charge
5) ☐ On another conviction      } ☐ Federal ☐ State
6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No  } If "Yes" give date filed _____

DATE OF ARREST ▶ Month/Day/Year _____
Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY ▶ Month/Day/Year _____

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS ☐ NO PROCESS* ☒ WARRANT    Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____    Before Judge: _____

Comments:

## ATTACHMENT TO PENALTY SHEET

21 U.S.C. § 841(a)(1), Possession With Intent To Distribute A Schedule II Controlled Substance (Methamphetamine).

*Depending upon the weight and/or purity of the methamphetamine and whether an 851 Information alleging prior felony narcotics conviction is filed*:

| | | |
|---|---|---|
| (1) | Imprisonment: | Possible Maximum Life Imprisonment |
| | | Possible Mandatory Minimum 5, 10, or 20 Years Imprisonment |
| (2) | Fine: | Possible Maximum $8,000,000 |
| (3) | Supervised Release: | Possible Maximum Lifetime |
| | | Possible Mandatory Minimum 4, 5, 8, or 10-Years |
| (4) | Special Assessment: | $100.00 |